NICHOLAS LINKER, ESQ. (pro hac vice)
ZEMEL LAW LLC
660 Broadway
Paterson, NJ 07514
Tel: 862-227-3106
Email: nl@zemellawllc.com

ROBERT SIBILIA S.B.N. 126979
Oceanside Law Center
P.O. Box 861
Oceanside, CA 92049
Tel: (760) 666-1151
Fax: (818) 698-0300
Email: robert@oceansidelawcenter.com
Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| JOSEPH SMITH, <br><br> Plaintiff, <br><br> vs. <br><br> RADIUS GLOBAL SOLUTIONS, LLC, <br><br> Defendant. | Case No.  5:22-cv-2259-RGK-SP <br><br> **PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT** <br><br> Judge: Hon. R. Gary Klausner <br> Date:   September 25, 2023 <br> Time:  9:00 AM <br> Courtroom: 850 |

i

# Table of Contents

I.   PRELIMINARY STATEMENT ................................................................- 1 -

II.  ARGUMENT ....................................................................................- 1 -

 A.  Plaintiff Maintains Article III Standing ...........................................- 1 -

   1.   Close Relationship to Harm Traditionally Regarded as a Basis for a
   Lawsuit in Common Law ...........................................................- 3 -

   2.   The Judgment of Congress .......................................................- 9 -

 B.  There is a Violation of the Statute ...............................................- 10 -

   1.   Unlawful Third-Party Disclosure ..............................................- 11 -

   2.   The Plain Language of the Statute Must be Taken as Written, and Does
   Advance the Purpose of the Statute .............................................- 12 -

   3.   Defendant's "Communication." ................................................- 14 -

   4.   The Vendor is Not an Agent of Defendant....................................- 16 -

   5.   The Statute Does Not Yield Absurd Results ..................................- 18 -

   6.   Agency Interpretations............................................................- 19 -

III.  CONCLUSION ...............................................................................- 20 -

# Table of Authorities

**Cases**

Action Alliance of Senior Citizens v. Sullivan, 930 F.2d 77 (D.D.C.C. 1991) . - 10 -

Al-Ahmed v. Twitter, Inc., 2023 U.S. Dist. LEXIS 604 (N.D. Cal. Jan. 3, 2023) . - 7 -

Ali v. Credit Corp. Sols., Inc., 2022 U.S. Dist. LEXIS 59126 (N.D.Ill. Mar. 30, 2022) .................................................................................- 1 -

Bank v. Pentagroup Financial, LLC, 2009 U.S. Dist. LEXIS 47985 (E.D.N.Y. June 9, 2009)....................................................... - 9 -, - 13 -

Barclift v. Keystone Credit Servs., LLC, 585 F. Sup. 3d 748 (E.D. Pa. 2022) .- 7 -

C.I.R. v. Lundy, 516 U.S. 235 (1996) ................................................- 13 -

Christianson v. Colt Industries Operating Corp., 870 F.2d 1292 (7th Cir. 1989)... - 10 -

Clearly v. Waldman, 167 F.3d 801 (3d Cir. 1999), cert. denied, 528 U.S. 870, 145 L. Ed. 2d 144, 120 S. Ct. 170)......................................................- 20 -

County of Los Angeles v. Davis, 440 U.S. 625, 99 S. Ct. 1379, 59 L. Ed. 2d 642 (1979)................................................................................... - 10 -

Cranor v. 5 Star Nutriion, L.L.C., 998 F.3d 686 (5th Cir. 2021) ......................- 8 -

Demarest v. Manspeaker, 498 U.S. 184 (1991) ...............................- 12 -

Deutsche Bank Nat'l Trust Co. v. Old Republic Title Ins. Grp., Inc., 532 F. Supp. 3d 1004 (D. Nev. 2021) ......................................................- 18 -

DiNaples v. MRS BPO, LLC, 934 F.3d 275 (3d Cir. 2019).................. - 5 -, - 11 -

Doe I v. Wal-mart Stores, Inc., 572 F.3d 677 (9th Cir. 2009) .........................- 17 -

Plaintiff's Opposition to Summary Judgment

Douglass v. Convergent Outsourcing, 765 F.3d 299 (3d Cir. 2014) ...- 5 -, - 11 -, - 18 -

Dutton v. Wolpoff & Abramson, 5 F.3d 649 (3d Cir. 1993) ..... - 12 -, - 13 -, - 19 -

Eichenberger v. ESPN, Inc., 876 F.3d 979 (9th Cir. 2017) ...................... - 6 -, - 8 -

Farrell v. Blinken, 4 F.4th 124 (D.C. Cir. 2021) ................................................- 8 -

Foti v. NCO Fin. Sys., 424 F. Supp. 2d 643 (S.D.N.Y. 2006)........................- 15 -

Frey v. Gangwish, 970 F.2d 1516 (6th Cir. 1992) ...........................................- 14 -

Gadelhak v. AT&T Services, Inc., 950 F.3d 458 (7th Cir. 2020)......................- 8 -

Gambles v. Sterling Infosystems, Inc., 234 F. Supp. 3d 510 (S.D.N.Y. 2017) .- 2 -

Garcia v. Creditors Specialty Serv., 2016 U.S. Dist. LEXIS 159686 (N.D. Cal.
   Nov. 16, 2016) ............................................................................................- 11 -

Gov't of Virgin Islands v. Berry, 604 F.2d 221 (3d Cir. 1979) .......................- 18 -

Griffin v. Oceanic Contractors, Inc., 458 U.S. 564, 73 L. Ed. 2d 973, 102 S. Ct.
   3245 (1982)..................................................................................................- 12 -

Heldman v. Sobol, 962 F.2d 148 (2d Cir. 1992)................................................- 2 -

Hunstein v. Preferred Collection & Mgmt. Servs., 17 F.4th 1016 (11th Cir. 2021)
   .................................................................................................... passim

Hunstein v. Preferred Collection & Mgmt. Servs., 48 F.4th 1236 (11th Cir. 2022)
   ..................................................................................................................- 7 -

Hunstein v. Preferred Collection & Mgmt. Servs., 994 F.3d 1341 (11th Cir. 2021)
   ................................................................................................................- 10 -

In re Facebook, Inc. Internet Tracking Litig., 956 F.3d 589 (9th Cir. 2020).....- 6 -

ING Bank, FSB v. Am. Reporting Co., LLC, 843 F.Supp.2d 491 (D.Del. 2012).. - 17 -

Irwin v. Mascott, 96 F. Supp. 2d 968 (N.D. Cal. 1999)..................................- 11 -

Jackin v. Enhanced Recovery Co., LLC, 606 F. Supp. 3d 1031 (E.D. Wash. June 10, 2022) .................................................................................................. passim

Japan Petroleum Co. (Nigeria) v. Ashland Oil, Inc., 456 F.Supp. 831 (D. Del. 1978) ........................................................................................................- 16 -

Jennings v. IQ Data Int'l Inc., 2023 U.S. Dist. LEXIS 77318 (W.D. Wash. May 3, 2023) ........................................................................ - 1 -, - 5 -, - 6 -

Jones v. Royal Admin. Servs., 887 F.3d 443 (9th Cir. 2018) ..........................- 16 -

Keller v. Northstar Locations Servs., 2021 U.S. Dist. LEXIS 157920 (N.D.Ill. Aug. 20, 2021) ................................................................................................- 1 -

Khimmat v. Weltman, Weinberg & Reis Co., LPA, 585 F. Supp. 3d 707 (E.D.Pa. Feb. 7, 2022) ...................................................- 1 -, - 13 -, - 14 -, - 19 -

Koby v. ARS Nat'l Servs., 2010 U.S. Dist. LEXIS 47205 (S.D. Cal. Mar. 29, 2010) ..........................................................................................................- 10 -

Lujan v. Defenders of Wildlife, 504 U.S. 555, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992) ...........................................................................................................- 2 -

Lupia v. Medicredit, Inc., 8 F.4th 1184 (10th Cir. 2021)...................................- 8 -

Market Co. v. Hoffman, 101 U.S. 112, 25 L. Ed. 782 (1879) ........................- 17 -

Mastel v. Miniclip SA, 549 F. Supp. 3d 1129 (E.D.Cal. 2021) ........................- 6 -

New Hampshire v. Maine, 532 U.S. 742 (2001)................................................- 1 -

Preston v. Midland Credit Mgmt., 948 F.3d 772 (7th Cir. 2020) ........... - 9 -, - 14 -

Robins v. Spokeo, Inc., 867 F.3d 1108 (9th Cir. 2017) .....................................- 7 -

Spokeo, Inc. v. Robins, 578 U.S. 330, 136 S. Ct. 1540, 194 L. Ed. 2d 635 (2016) - 2 -, - 3 -

Sputz v. Alltran Fin., LP, 2021 U.S. Dist. LEXIS 233292 (S.D.N.Y. Dec. 5, 2021) ..........................................................................................................- 8 -

Plaintiff's Opposition to Summary Judgment

St. Pierre v. REtreival-Masters Creditors Bureau, 898 F.3d 351 (3d Cir. 2018) . - 5 -

Staub v. Harris, 626 F.2d 275 (3d Cir. 1980)......................................- 20 -

Tailford v. Experian Info. Sols., Inc., 26 F.4th 1092 (9th Cir. 2022) ...............- 6 -

Thomas v. Unifin, Inc., 2021 U.S. Dist. LEEXIS 157814 (N.D.Ill. Aug. 20, 2021) .....................................................................................- 1 -

TransUnion LLC v. Ramirez, 141 S.Ct. 2190, 210 L. Ed. 2d 568 (2021).........- 3 -

United States DOJ v. Reporters Comm. For Freedom of Press, 489 U.S. 749, 109 S. Ct. 1468, 103 L. Ed. 2d 774 (1989) ...........................................- 5 -

United States v. Campos-Serrano, 404 U.S. 293, 92 S. Ct. 471, 30 L. Ed. 2d 457 (1971)...................................................................................- 17 -

Ward v. Nat'l Patient Account Servs. Sols., 9 F.4th 357 (6th Cir. 2021) . - 4 -, - 8 -

Williams v. Javitch, Block & Rathbone, LLP, 480 F. Supp. 2d 1016 (S.D. Ohio 2007) .....................................................................................- 14 -

Plaintiff's Opposition to Summary Judgment

## I.     **PRELIMINARY STATEMENT**

The case involves the disclosure of private debt information to an unauthorized third-party, RevSpring, in direct violation of § 1692c(b) of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"). Defendant seeks dismissal for lack of standing, and failure to state a claim. Concerning Article III standing, under Ninth Circuit law, "statutory provisions that protect consumer privacy are sufficient to confer standing." *Jennings v. IQ Data Int'l Inc.*, 2023 U.S. Dist. LEXIS 77318 (W.D. Wash. May 3, 2023). Merits-wise, every federal court to address the merits has found that there is a violation.[1] In fact, one case has already ruled that using the same letter vendor, RevSpring, plainly violates the statute.  Accordingly, Defendant's motion should be denied.

## II.     **ARGUMENT**

### A. Plaintiff Maintains Article III Standing[2]

The basic premise of this case involves the disclosure of Plaintiff's private

---

[1] *Hunstein v. Preferred Collection & Mgmt. Servs.*, 17 F.4th 1016 (11th Cir. 2021), *reversed on other grounds by* 48 F.4th 1236; *Jackin v. Enhanced Recovery Co., LLC*, 606 F. Supp. 3d 1031 (E.D. Wash. June 10, 2022); *Khimmat v. Weltman, Weinberg & Reis Co., LPA*, 585 F. Supp. 3d 707 (E.D.Pa. Feb. 7, 2022); *Ali v. Credit Corp. Sols., Inc.*, 2022 U.S. Dist. LEXIS 59126 (N.D.Ill. Mar. 30, 2022); *Keller v. Northstar Locations Servs.*, 2021 U.S. Dist. LEXIS 157920 (N.D.Ill. Aug. 20, 2021); *Thomas v. Unifin, Inc.*, 2021 U.S. Dist. LEEXIS 157814 (N.D.Ill. Aug. 20, 2021).

[2] Preliminary, Defendant is judicially estopped from arguing that Plaintiff does not maintain standing. This requires a showing of three factors: a party's position must be "clearly inconsistent" with its earlier position; "whether the party has succeeded in persuading a court to accept that party's earlier position"; whether the party "would derive an unfair advantage or impose an unfair detriment on the opposing party." *New Hampshire v. Maine*, 532 U.S. 742, 751 (2001).

Here, it was Defendant that removed this case from state court. Thus, Defendant is the party that invoked federal jurisdiction and affirmatively stated to the Court that jurisdiction was proper, which the Court accepted. [ECF 1]. Now, Defendant is attempting to revoke its first statement, after taking full advantage of federal litigation. Judicial estoppel plainly applies.

- 1 -

information to a third party. In addition to being a clear violation of the statute, the disclosure of Plaintiff's personal debt information is the exact <u>type of harm</u> that Congress meant to protect against and the same <u>type of harm</u> found in common law torts.

A plaintiff cannot "allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact-requirement of Article III." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016). Rather, "a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent'" as a result of a violation. *Id*. at 1548. "To establish Article III standing, a plaintiff must establish the following three elements as an 'irreducible constitutional minimum': (1) injury-in-fact . . . (2) causation of the injury, meaning that the injury is 'fairly traceable' to the challenged action of the defendant; and (3) redressability." *Gambles v. Sterling Infosystems, Inc.*, 234 F. Supp. 3d 510, 517 (S.D.N.Y. 2017) (*citing Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). The traceability requirement for Article III standing means that the plaintiff must "demonstrate a causal nexus between the defendant's conduct and the injury." *Heldman v. Sobol*, 962 F.2d 148, 156 (2d Cir. 1992).

For an injury to be "particularized," it "must affect the plaintiff in a personal and individual way." *Spokeo,* 136 S. Ct. at 1548. However, "in the

context of standing, "concrete" is not necessarily synonymous with "tangible." *Id.* at 1549. In evaluating whether an intangible injury satisfies the "concreteness" requirement, the Supreme Court in *Spokeo* noted that a concrete injury need not be a tangible injury and offered two important considerations: (1) history— whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts" and (2) the judgment of Congress—reliance on Congress's ability to identify intangible harms and elevate these harms to a legally cognizable status. *Id.* at 1549. In *Spokeo*, the Court addressed whether a violation of a statute's procedural requirement is sufficiently concrete under Article III standing requirements. *Id.* There, the plaintiff brought suit alleging the defendant violated the FCRA and the Supreme Court confirmed that intangible statutory injuries, including informational injuries, are sufficiently "concrete" to constitute injury-in-fact where the harm is invasion of a legally protected interest. *Id*. at 1553. The Supreme Court has recognized that "the violation of a procedural right granted by statute can be sufficient in some circumstances to constitute" concrete harm. *Id*. at 1549. *Spokeo* is still good law, especially in the 9th Circuit and has not been overturned. *See TransUnion LLC v. Ramirez*, 141 S.Ct. 2190, 210 L. Ed. 2d 568 (2021) (approvingly citing to *Spokeo* several times).

    1. <u>Close Relationship to Harm Traditionally Regarded as a Basis for a</u>

Lawsuit in Common Law

Plaintiff's claim under § 1692c(b) protects against the same **type** of harm as those recognized under common law. The "common-law or historical analogue need not be an 'exact duplicate' to make this showing." *Ward v. Nat'l Patient Account Servs. Sols.*, 9 F.4th 357, 362 (6th Cir. 2021) (*citing Ramirez*, 141 S. Ct. at 2209). This claim sounds in reputational harm and disclosure of private of information. This type of harm has traditionally been recognized by courts of law and also sufficient to confer standing.

"Actions to enforce the 'right of privacy' have long been litigated in American courts, and the tort of intrusion upon one's right to seclusion is recognized in most states." *Ward*, 9 F.4th at 362 (*citing* Restatement (Second) of Torts § 652A (1977)); *see also Ramirez*, 141 S. Ct. at 2204 ("Various intangible harms can also be concrete" including "reputational harms, disclosure of private information, and intrusion upon seclusion."). Indeed, the disclosure of private information to third parties has long been found sufficient to confer Article III standing. For instance, in *Ward*, the Sixth Circuit specifically stated that "improperly shar[ing] personal information with a third party" closely resembles an invasion of privacy. *Id.*

Similarly, the Eleventh Circuit panel in *Hunstein* II found that a violation of §1692c(b) had a close relationship to the common law tort of invasion of

privacy, specifically the public disclosure of private facts. 17 4th at 2023 ("For more than a century, invasions of personal privacy have been regarded as a valid basis for tort suits in American courts."); *see also United States DOJ v. Reporters Comm. For Freedom of Press*, 489 U.S. 749, 763 (1989) ("both the common law and the literal understandings of privacy encompass the individual's control of information concerning his or her person."); *DiNaples v. MRS BPO, LLC*, 934 F.3d 275, 280 (3d Cir. 2019) ("invasion of privacy . . . 'is closely related to harm that has traditionally been regarded as providing a basis for a lawsuit in English and American courts.'" (*citing St. Pierre v. Retrieval-Masters Creditors Bureau*, 898 F.3d 351, 358 (3d Cir. 2018)).

This case presents a comparable scenario: Defendant here disclosed personal debt information to third-party RevSpring which "implicates core privacy concerns." *DiNaples*, 934 F.3d at 280 (*citing Douglass v. Convergent Outsourcing*, 765 F.3d 299, 304 (3d Cir. 2014)).

Most importantly, other courts applying Ninth Circuit precedent have also found that the alleged action here resembles the common law tort of invasion of privacy, and that this type of unlawful disclosure sufficiently confers Article III standing. *See Jennings*, 2023 U.S. Dist. LEXIS 77318, at *8. *Jennings* explicitly examined a § 1692c(b) claim in the context of the Ninth Circuit post-*Ramirez*. The court there found that "one of the principal purposes of the FDCPA is to

prevent . . . 'invasions of individual privacy.'" *Id.* at \*5-6. It then found that the claim bore a "close relationship" to the tort of "Publicity Given to Private Life." *Id.* at \*6. Specifically, relying on Ninth Circuit precedent, it found that the "harm that both the common law tort . . . and § 1692c(b) seek to remedy is the same: it protects people's privacy." *Id.* at \*7 (*citing Tailford v. Experian Info. Sols., Inc.*, 26 F.4th 1092 (9th Cir. 2022)). In essence, as the Circuit decided in *Tailford*, the violation of one's privacy is "a harm that is traditionally recognized as requiring a remedy." *Id.* at \*7-8. As such, because the statute protects against the same **kind of harm**, that of the disclosure of private information, it closely resembles the common law cause of action, even if it does not match every single element.

The *Jennings* approach fits well within other Ninth Circuit cases that also show the invasion of privacy confers standing because it bears a close relationship to the common law privacy torts. *See e.g. In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 596 (9th Cir. 2020) (finding violations of the Wiretap Act as a "clear invasion of the historically recognized right to privacy"); *see also Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 981 (9th Cir. 2017) (disclosure of private information was concrete); *Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129 (E.D.Cal. 2021) (company violated a plaintiff's right to privacy by collecting personal information without the plaintiff's consent involved a sufficiently concrete injury); *Al-Ahmed v. Twitter, Inc.*, 2023 U.S. Dist. LEXIS 604 (N.D.

Cal. Jan. 3, 2023).

By contrast, courts in other circuits have found that after *Ramirez*, letter vendor claims lack standing. For instance, in *Hunstein v. Preferred Collection & Mgmt. Servs.*, 48 F.4th 1236, 1239 (11th Cir. 2022) (Hunstein III), through a split decision, the majority overruled *Hunstein* II. Under Ninth Circuit law however, the opinions of the Dissent in *Hunstein* III, and the majority of *Hunstein* II, are more on point.[3]

Other cases, such as in *In re FDCPA Mailing Vendor Cases*, 2021 U.S. Dist. LEXIS 139848 (E.D.N.Y. July 23, 2021) and *Barclift v. Keystone Credit Servs., LLC*, 585 F. Sup. 3d 748 (E.D. Pa. 2022) hold that disclosure to a letter-vendor does not exactly match the elements of defamation or the invasion of privacy. However, an exact match is plainly not required under Ninth Circuit precedent. *Robins v. Spokeo, Inc.*, 867 F.3d 1108, 1115 (9th Cir. 2017). *See also Hunstein II,* 17 F.4th 1016, 1024. (Article III does not require an exact match between a statutory claim and a common-law cause of action"); *Farrell v.*

---

[3] In *Hunstein*, the court analyzed a footnote from Justice Kavanaugh in Ramirez which stated that transmission to printing vendors was insufficient to satisfy the publication requirement of a defamation tort. 17 F.4th at 1031-32. When addressing the footnote in question, the court (and then subsequently the dissent in *Hunstein* III) found that the footnote was merely dicta and had no sway over the current decision. Id. at 1031-32; 48 F.4th at 1262 n.4. Specifically, the court stated that "overreading TransUnion's dictum would transform Spokeo's 'close relationship' test into a 'perfect match' test – thereby effecting (sub silentio) a sea change in Article III standing doctrine – and, in fact, would do the very thing that the Court (again, above the line) said it was not doing, namely, 'requir[ing] an exact duplicate' of a common-law claim." *Id.* at 1032 (citing *Ramirez*, 141 S. Ct. at 2204). In other words, standing was sufficient in *Hunstein* and under *Ramirez* because the plaintiff had alleged that his information was disclosed, which was sufficiently close to, but not an exact replica, of the traditional common law tort of defamation. Thus, while the publication to a printing vendor was not sufficient for the tort of libel, it did not need to be for standing under § 1692c(b). In sum, the panel found that its decision stands, despite the footnote in *Ramirez*.

*Blinken*, 4 F.4th 124, 133 (D.C. Cir. 2021) (the Constitution 'does not require an exact duplicate [common law injury] in American history and tradition'" (*quoting Ramirez*, 141 S. Ct. at 2209)). *Ward*, 9 F.4th at 362; *Lupia v. Medicredit, Inc.*, 8 F.4th 1184, 1192 (10th Cir. 2021) ("phone call poses the same *kind* of harm recognized at common law – an unwanted intrusion into a plaintiff's peace and quiet.").

Some cases in opposition state that the claim here "does not remotely rise to the level of 'publicizing' private information to the public at large." *Sputz v. Alltran Fin., LP*, 2021 U.S. Dist. LEXIS 233292, at *9 (S.D.N.Y. Dec. 5, 2021); *see also* Defendant's Motion, p. 8. This is contrary to the Circuit law mentioned above and a mistake. *See, e.g.*, *Cranor v. 5 Star Nutriion, L.L.C.*, 998 F.3d 686, 693 (5th Cir. 2021) (a court's inquiry should not focus on "the precise point at which those harms become actionable."). The major point of Plaintiff's cited cases is that a "close relationship" to a common law cause of action does not mean that the statutory harm must satisfy every element. *See Gadelhak v. AT&T Services, Inc.*, 950 F.3d 458, 462-63 (7th Cir. 2020) ("we are meant to look for a 'close relationship' in kind, not degree"). Indeed, in the Ninth Circuit, additional requirements imposed by other courts, like publication, are **not necessary**. "Tellingly, privacy torts do not always require additional consequences to be actionable." *Eichenberger*, 876 F.3d at 983 (*quoting* Restatement (Second) of

Torts § 652B cmt. B (Am. Law Inst. 1977) (recognizing the tort of intrusion upon seclusion, for which the "intrusion itself" makes the defendant liable)).

Here, just like in the other Ninth Circuit cases, Plaintiff has established a clear invasion of the historically recognized right to privacy when his private debt information (name, creditor, delinquent obligation, amount, address) was transmitted to RevSprings. For these reasons, the claim here presents the same *kind* of harm as that found at common law and Plaintiff maintains standing.

2.  The Judgment of Congress

Additionally, Congress has identified the disclosure of private information as a concrete harm that should be protected. "The purpose of § 1692c is to protect the consumer's privacy and reputation." *Bank v. Pentagroup Financial, LLC*, 2009 U.S. Dist. LEXIS 47985 (E.D.N.Y. June 9, 2009); 15 U.S.C. § 1692(a); *see also Preston v. Midland Credit Mgmt.*, 948 F.3d 772, 782 n.21 (7th Cir. 2020) ("In some cases, a strict interpretation of the FDCPA may be necessary to protect consumer privacy and prevent embarrassment to consumers"). Again, the panel in *Hunstein* II concluded that the judgment of Congress also favors a finding of standing. 17 4th at 1032. Thus, it is clear that Congress intended to elevate the harm here to a private cause of action to allow consumers to enforce their own privacy concerns.

Alternatively, because the case began in State Court, the action should be

remanded, not dismissed.

**B. There is a Violation of the Statute**

Defendant's motion should be denied because it goes directly against the plain language of the statute, which must be given its plain meaning, absent any ambiguity. "Defendant may not ignore mandated sections of the FDCPA simply so that they may engage in a form of communication . . . that they find most effective." *Koby v. ARS Nat'l Servs.*, 2010 U.S. Dist. LEXIS 47205, at*16 (S.D. Cal. Mar. 29, 2010). The one reported Circuit case directly on this issue has found a violation. *See Hunstein v. Preferred Collection & Mgmt. Servs.*, 994 F.3d 1341 (11th Cir. 2021). Even after potential scrutiny by the Supreme Court, the Eleventh Circuit doubled down on its decision and affirmed that a communication with a letter vendor is a violation of § 1692c(b). *See Hunstein* II.

Even though *Hunstein* II was superseded by *Hunstein* III, the *en banc* panel never rejected the merits holding addressed in either *Hunstein* I or *Hunstein* II leaving its precedential value in place. *See County of Los Angeles v. Davis*, 440 U.S. 625, 646 n. 10 (1979) (Powell, J., dissenting); *Action Alliance of Senior Citizens v. Sullivan*, 930 F.2d 77, 83 (D.D.C.C. 1991); *Christianson v. Colt Industries Operating Corp.*, 870 F.2d 1292, 1298 (7th Cir. 1989).

Most importantly, the only case law in *this* Circuit on the issue found a violation in the face of all of Defendant's arguments. *See Jackin*, 606 F. Supp.3d

Plaintiff's Opposition to Summary Judgment

1031.

1.    <u>Unlawful Third-Party Disclosure</u>

Defendant first argues that there is no third-party disclosures because there is no evidence any employee at the third-party actually saw Plaintiff's information. But the third-party is RevSpring itself, not any individual at RevSpring. There is no denying that Plaintiff's information was disclosed to RevSpring. *See* Declaration of Scott Astheimer [ECF 22-4], ¶ 4 ("RGS provided RevSpring with . . . certain information about Plaintiff" including name, balance, charge off date, etc.). The cases cited to by Defendant all relate to a standing argument, not the merits, and no case has found that an individual employee at the Third-Party needs to read the information in order to sustain the merits of the claim. *See Jackin*, at 1037 (finding a disclosure to **RevSpring** was a third-party disclosure). Two Circuit Court cases have also already rejected the argument that a third party must read the information. *DiNaples*, 934 F.3d at 280 (disclosure is itself the harm); *Douglass*, 765 F.3d at 306 (disclosure has the potential to cause harm). In the same vein, *Garcia v. Creditors Specialty Serv.*, 2016 U.S. Dist. LEXIS 159686, at *13 (N.D. Cal. Nov. 16, 2016), specifically dismissed the argument that a plaintiff needs to prove "that a third party has actually seen the envelope or ascertained its contents." *See also Irwin v. Mascott*, 96 F. Supp. 2d 968, 976 (N.D. Cal. 1999) ("A debt collector violates the FDCPA by sending a notice containing unlawful provisions.

Whether the notice is received is irrelevant to the issue of liability."). This argument can be easily dismissed.

2. <u>The Plain Language of the Statute Must be Taken as Written, and Does Advance the Purpose of the Statute</u>

Defendant argues that Plaintiff's claims should be dismissed because the claim reads the statute too literally. But courts have repeatedly found that a violation of the plain language of the statute is a violation, regardless of whether or not it has an unintended effect. Even so, the claim and the plain language of the statute do advance the purpose of the statute. Defendant contends that the Court should look to statutory interpretation to derive another meaning from the plain language, but this is uncalled for. "When [the court] find the terms of a statute unambiguous, judicial inquiry is complete except in rare and exceptional circumstances." *Demarest v. Manspeaker*, 498 U.S. 184, 190 (1991), *superseded by statutory amendment on other grounds*, 28 U.S.C. § 1821; *see also Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571, 73 L. Ed. 2d 973, 102 S. Ct. 3245 (1982) (further inquiry warranted only in rare cases where literal application of statute would produce result "demonstrably at odds with the intentions of its drafters."); *Dutton v. Wolpoff & Abramson*, 5 F.3d 649 (3d Cir. 1993). The plain language is plainly not at odds with the statute's intent.

"[I]t is Congress, not a court, that decides what are the best ways to protect the interests at stake." *Dutton*, 5 F.3d at 654; *See also C.I.R. v. Lundy*, 516 U.S. 235, 252 (1996) (courts "are bound by the language of the statute as it is written" and "**are not at liberty to rewrite [the] statute because [the court] might deem its effects susceptible of improvement**." (internal citations omitted) (emphasis added). Here, Congress has decided to prohibit all communications except in three circumstances and to six excepted people. *See* 15 U.S.C. § 1692c(b). If Congress had wanted to include letter vendors, it could have written that exception into the statute.[4] Indeed, the Court in *Khimmat* found that "the best insight into any statute's purpose is the word that Congress used." 585 F. Supp. 3d at 714; *see also Jackin*, 606 F. Supp. 3d at 1036 ("Congress used language that, on its face, bars debt collectors from communicating consumer-debt related information to mail vendors.").

Congress' intent being clear, the statute serves a clear purpose in attempting to protect the debtor from the over-exposure of being known as a debtor. "The purpose of § 1692c is to protect the consumer's privacy and reputation." *Bank*, 2009 U.S. Dist. LEXIS 47985, at *14; 15 U.S.C. § 1692(a). By excluding all but a few from receiving communications in connection with a debt, the debtor's privacy

---

[4] For instance, five states were capable of composing a statute that excepted letter vendors and other persons deemed to have a "legitimate business need" for the debtor's information. See *Cal. Civ. Code* § 1788.12(e); *Fla. Stat.* §559.72(5); *Iowa Code* § 537.7103(3)(a)(2); *Md. Code*, Commercial Law, § 14-202; *Vt. Code* R. 3-2-103:CP 104.3(e); *Wis. Stat.* § 427.104.

is protected and the purpose of the FDCPA is fulfilled. *Khimmat* also adopts this purpose of the statute, and implicitly rejects Defendant's narrower definition of the purpose as limited only to disclosures to friends, neighbors, or an employer. Instead, it held that "[d]isclosure to a letter vendor is a form of invasion of individual privacy. Whether it is one that Congress intended to forbid is beyond this Court's power to say." 585 F. Supp. 3d at 714.

While Defendant essentially argues this is at best a *de minimus* violation, the case law is clear. The FDCPA "must be enforced as written, even when imminently sensible exceptions are proposed in the face of an innocent and/or *de minimus* violation." *Williams v. Javitch, Block & Rathbone, LLP*, 480 F. Supp. 2d 1016, 1021 (S.D. Ohio 2007) (*citing Frey v. Gangwish*, 970 F.2d 1516, 1521 (6th Cir. 1992)); *Preston*, 948 F.3d at 784 (interpreting § 1692f(8) strictly and rejecting a *de minimus* type of argument suggesting that a "benign language exception" should be judicially edited into the FDCPA).

### 3. Defendant's "Communication."

The FDCPA defines "communication" as "the conveying of information regarding a debt directly or indirectly to any person through any medium." 15 U.S.C. § 1692a(2). Here, it is apparent that Defendant conveyed information regarding Plaintiff's debt to a third party, the letter vendor. Thus, the transmittal of information here is a "communication." *See Foti v. NCO Fin. Sys.*, 424 F. Supp.

2d 643, 657 (S.D.N.Y. 2006) (rejecting a narrow reading of the term "communication" "given the choice of language by Congress.").[5]

The court in *Hunstein* II directly address this "medium" argument (i.e. that the communication was not to a consumer) and also found that a debt collector's communication with a letter vendor is, indeed, in connection with the collection of a debt. First, interpreting the vendor as a mere "medium" has its own interpretive problems, as that definition would also include other parties who are specifically exempted in the statute, such as the consumer's attorney and the debt collector's attorney. 17 F.4th at 1033 n.13. By Defendant's argument, the inclusion of the attorneys (who also may be used to convey information) would be unnecessary and meaningless.

Next, starting with the plain meaning of the phrase "in connection with", the *Hunstein* court found that dictionaries have adopted a broad definition. *Id*. at 1034. (the phrase 'in connection with' is 'invariably a vague, loose connective'").

---

[5] Defendant's notion that its third-party letter vendor communication is not an attempt to collect a debt is easily dispelled with a more common improper disclosure example. Where a debt collector contacts a debtor's roommate, advises the roommate that they have an important matter to discuss concerning a debt with the debtor, and asks the roommate to have the debtor call the debt collector back, this communication violates the FDCPA. West v. Nationwide Credit, Inc., 998 F. Supp. 642, 644-45 (W.D.N.C. 1998) (contact with neighbor); Thomas v. Consumer Adjustment Co., 579 F. Supp. 2d 1290 (E.D.Mo. 2008) (call to girlfriend was a communication under § 1692c(b)); see also Krapf v. Collectors Training Inst. Of Ill., Inc., 2010 U.S. Dist. LEXIS 13063 (W.D.N.Y. Feb. 15, 2010) (contacting employer about a "business matter" violates § 1692c(b)). In this example, the third-party roommate is a person to whom a communication is conveyed regarding the debt, even if the communication is simply that the roommate should pass along the message to the debtor. Similarly, here, the letter vendor a person to whom a communication is conveyed regarding the debt from Defendant that contained information regarding Plaintiff's debt. This included Plaintiff's names, address, status as a debtor, and amount of the debt. The fact that Defendant's communications with the vendor ultimately prompted a communication to Plaintiff ensures that the communication was in connection with the collection of Plaintiff's debt, be it direct, or indirect.

Plaintiff's Opposition to Summary Judgment

Accordingly, the defendant's transmittal to the vendor which included "specific details" regarding the debt left the Circuit to conclude "[i]t seems to us inesacapable that [defendant]'s communication to [the vendor] at least 'concerned,' was 'with reference to,' and bore a 'relationship [or] association' to the collection of [plaintiff]'s debt." *Id*. at 1035.

For these reasons, it is clear that the "communication" in §1692c(b) is broader and more encompassing. As such, the transmittal of information directly to the letter vendor is a "communication in connection with the collection of a debt" under § 1692c(b). *See Jackin*, 606 F. Supp. 3d at 1037 ("For these reasons, the Court finds that Defendant's transmission of Plaintiff's debt information to RevSpring, whether passive or not, constitutes a communication as defined under the FDCPA.").

### 4.  The Vendor is Not an Agent of Defendant

The "central issue [for agency] is control, i.e., whether the parent corporation dominates the activities of the subsidiary." *Japan Petroleum Co. (Nigeria) v. Ashland Oil, Inc.*, 456 F.Supp. 831, 841 (D. Del. 1978); *Jones v. Royal Admin. Servs.*, 887 F.3d 443, 448 (9th Cir. 2018). If the principal "assumes the right to control the time, manner and method of executing the work, as distinguished from the right merely to require certain definite results in conformity to the contract," then there is an agency relationship. *ING Bank, FSB v. Am. Reporting Co., LLC*,

Plaintiff's Opposition to Summary Judgment

843 F.Supp.2d 491, 495 (D.Del. 2012). "[I]f, however, a worker is not subject to that degree of physical control, but is subject only to the general control and direction by the contractee, [that] worker is terms an independent contractor." *Id.*; *Doe I v. Wal-mart Stores, Inc.*, 572 F.3d 677, 682-83 (9th Cir. 2009).

Defendant has not established its burden of proof. Defendant has not asserted that it controls the time, manner, and place that the letter vendor prints and mails its letters. Thus, the argument fails. *See Jackin*, 606 F. Supp. 3d at 1037 ("It is entirely unclear from Defendant's briefing whether and to what extent RevSpring acted on Defendant's behalf, whether there was the requisite manifestation of assent, or to what extent RevSpring was subject to Defendant's control.").

Even assuming, *arguendo*, that there is an agency relationship, there is no exception under the plain language of the statute for third party agents. *Only* six exceptions are listed in the statute. The fact that the statute includes attorneys of the debt collectors is telling, because, by Defendant's own argument, the attorney would be included as an agent of Defendant, acting in its behalf. *See also Hunstein* II, at 1033 n. 13. As this would make the inclusion of the attorney in the statute excessive and unnecessary, third-party agents cannot be considered exempt from liability under § 1692c. *See United States v. Campos-Serrano*, 404 U.S. 293, 301 n.14 (1971) (no word shall be superfluous in a statute). Therefore, the letter vendor is not an agent, but an independent contractor. Moreover, even if there is agency,

agency does not save the Defendant. *See Jackin*, at 1038 ("Defendant ignores an obvious problem the statutory text poses to their argument.").

### 5. The Statute Does Not Yield Absurd Results

"Where the plain meaning of a statute would lead to an absurd result, [the courts] presume[s] 'the legislature intended exceptions to its language [that] would avoid results of this character.'" *Douglass*, 765 F.3d at 203; *see also Deutsche Bank Nat'l Trust Co. v. Old Republic Title Ins. Grp., Inc.*, 532 F. Supp. 3d 1004, 1011 (D. Nev. 2021). "[A court] cannot find language exempt from [the FDCPA] . . . if the exception would run counter to the very reasons Congress enacted the FDCPA." *Id*. In *Douglass*, the Third Circuit found that the mere disclosure of plaintiff's account number on the outside of an envelope ran contrary to the FDCPA's purpose of avoiding the invasion of privacy. *Id*. Similarly here, the exposure of plaintiff's substantive information (name, address, creditor, debt amount) to a third-party vendor runs contrary to avoiding the invasion of plaintiff's privacy.

To the extent that Defendant argues that it would not be able to contact court employees or use a telephone, there are two problems with this argument. First, using a telephone is a proper example of a medium through which a communication is made. The Court in *Khimmat* has already distinguished any comparison to telegraph companies, which are "wire-based, regulated utilities,

plainly distinguishable from private letter vendors." 585 F. Supp. 3d at 715. Second, the statute expressly allows communications with permission of the court. In any event however,  these would be examples of the type of absurd results that can be exempted in accordance with the purpose of the statute. Plaintiff is not advocating that Defendant cannot speak to the courts. But court employees and third-party letter vendors are different, or "plainly distinguishable." Preventing the debt collector from contacting the court does not promote privacy interest, but preventing communications with letter vendors does.[6]

6. <u>Agency Interpretations</u>

The best arbiter of the law is the court, and courts already decided that use of a letter vendor is a violation. Between the courts and irrelevant, non-binding agency opinions, the reported decisions' interpretation is more persuasive. Not only is FTC opinion or guidance not binding, but they are also not even entitled to deference. "The FDCPA charges the FTC with enforcement but prohibits it from issuing rules or regulations on debt collection practices." *Dutton*, 5 F.3d. at 654 (*citing* 15 U.S.C. § 1692l(a), (d)). "Accordingly, the FTC's advisory opinions are not entitled to deference in FDCPA cases except perhaps to the extent that their

---

[6] The Department of Justice agrees, and points out that "restricting the dissemination of consumer information to vendors does advance consumers' privacy interest, even in the aggregate –vendors are often the source of data breaches, and use of vendors by debt collectors increases consumers' exposure to the privacy risks associated with data breaches." Feist v. Arcadia Recovery Bureau, LLC, Case No. 5:21-cv-2015 (E.D.Pa.) [ECF 25], p. 26 (citing Niket Nishant, Morgan Stanley Faces Data Breach, Corporate Client Info Stolen in Vendor Hack, Reuters (July 8, 2021), http://perma.cc/D8XV-66C2).

Plaintiff's Opposition to Summary Judgment

logic is persuasive." *Id.*; *see also Staub v. Harris*, 626 F.2d 275, 279 (3d Cir. 1980).[7]

Moreover, the CFPB's mention of letter vendors has nothing to do with § 1692c and does not explicitly approve vendors as an exception to § 1692c(b). *See Jackin*, 606 F. Supp. 3d at 1038 ("the Court will not opine on the CFPB's regulatory priorities and will not assume from its inaction in this area that it supports the practice."). To the extent § 1692c(b) is relevant, the regulation runs contrary to the text of the statute. "To be persuasive, an agency interpretation cannot run contrary to Congress's intent as reflected in a statute's plain language and purpose." *Madison v. Resources for Human Dev., Inc.*, 233 F.3d 175, 187 (3d Cir. 2000) (*citing Clearly v. Waldman*, 167 F.3d 801, 808 (3d Cir. 1999)).

As the only persuasive authority to address the issue are the reported decisions, they should be the only consideration when interpreting the statute.

## III.   **<u>CONCLUSION</u>**

Accordingly, Defendant's motion should be denied.

Dated this 5th of September, 2023

Respectfully Submitted,

---

[7] Even so, the FTC has also commented that a debt collector violates this provision when it has reason to believe a conversation with a consumer can be overheard, by anyone. See Berg v. Merchs. Ass'n Collection Div., 586 F.Supp. 2d 1336, 1342 (S.D. Fla. 2008) (citing Federal Trade Commission Staff Commentary on the FDCPA, 53 Fed. Reg. 50104 (Dec. 13, 1988)).

Nicholas Linker, Esq. (pro hac vice)
Zemel Law LLC
660 Broadway
Paterson, NJ 07514
T:862-227-3106
NL@zemellawllc.com

/s/ Robert Sibilia
ROBERT SIBILIA S.B.N. 126979
Oceanside Law Center
P.O. Box 861
Oceanside, CA 92049
Tel: (760) 666-1151
Fax: (818) 698-0300
Email: robert@oceansidelawcenter.com
Attorneys for Plaintiff

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 6th day of September, 2023, the foregoing document was served on all parties via the Court's e-filing system.

/s/ Robert Sibilia
ROBERT SIBILIA

Plaintiff's Opposition to Summary Judgment

## **<u>CERTIFICATE OF COMPLIANCE</u>**

I hereby certify that this brief contains approximately 5,347 words, which complies with the word limit of L.R. 11-6.1.

<u>/s/ Robert Sibilia</u>
ROBERT SIBILIA

Plaintiff's Opposition to Summary Judgment